1

2

3

4

5              **UNITED STATES DISTRICT COURT**

6                    **DISTRICT OF NEVADA**

7

8

9    PAUL L. BROWNING,                    )

10            Petitioner,                 )        3:05-cv-0087-RCJ-WGC
                                          )
11   vs.                                  )
                                          )
12   RENEE BAKER, *et al.*,               )
                                          )
13            Respondents.                )
                                          )
14   _____/

15

16   Introduction

17          This action is a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, by

18   Paul L. Browning, a Nevada prisoner sentenced to death.

19          There are, pending, a motion for summary judgment filed by Browning (ECF No. 132),

20   a motion by respondents to strike the summary judgment motion (ECF No. 140), a motion by

21   Browning to expand the record (ECF No. 133), a motion by Browning for leave to conduct

22   discovery (ECF No. 134), a motion by Browning for evidentiary hearing (ECF No. 135), and a

23   "motion to strike or supplement evidentiary hearing request" filed by Browning.  In this order the

24   court resolves each of those motions.

25

26

1   Background Facts and Procedural History

2        In its June 10, 2004, decision in Browning's case, the Nevada Supreme Court described, as

3   follows, the factual background of the case, as revealed by the evidence at trial:

4        On November 8, 1985, Hugo Elsen was stabbed to death during a robbery of
     his jewelry store in Las Vegas.  His wife, Josy Elsen, was in the back of the store

5        when he was attacked.  Hearing noises, she went into the showroom and saw a black
     man wearing a blue cap squatting over her husband holding a knife.  She fled out the

6        back door to the neighboring store and asked the employees there to call the police.
     She and a neighboring employee, Debra Coe, then returned to the jewelry store where

7        Coe placed a pillow under Elsen's head and covered him with a blanket.  Two to four
     minutes later help arrived.  Elsen soon died, after giving a very brief description of

8        the perpetrator as a black man wearing a blue cap with loose curled wet hair.  Debra
     Coe also described a man she had seen leaving the vicinity: he was wearing a blue

9        cap, blue jacket, Levi's, and tennis shoes; was about 27 years old and about six-feet
     tall; and had hair a little longer than the cap he was wearing and a mustache.  Another

10       witness, Charles Woods, identified a person he saw leaving the vicinity as a black
     man wearing a dark or blue cap and dark trousers, about six-feet tall, and weighing

11       about 180 pounds.

12       Shortly after the crimes, Randy Wolfe approached police and told them that a
     man was in Wolfe's nearby hotel room with a large amount of jewelry.  The police

13       went to the room and found Browning with the jewelry.  Browning was arrested and
     taken to Coe and Woods for a showup identification.  They identified Browning as

14       the man they saw leaving the vicinity of the crimes.

15       At trial, Vanessa Wolfe, Randy Wolfe's wife, testified for the State to the
     following.  She returned to her hotel room on the day of the crimes and found

16       Browning taking off his clothes.  He had a coat, which was either on the floor or on
     the bed.  On the bed was a lot of jewelry with tags, which she helped cut off.

17       Browning asked Vanessa to help him get rid of some of the jewelry and said he
     thought he had just killed somebody.  She helped Browning by throwing the tags and

18       his hat in a nearby dumpster.  Browning gave her a knife to dispose of.  Instead, she
     put the knife in a pizza box in a closet under the stairs.  The officers assigned to

19       Browning's case testified that they retrieved all of this evidence from the places that
     Vanessa described.  Randy Wolfe also testified that when he went into his hotel

20       room, Browning was sitting on the bed and said that he just robbed a jewelry store
     and thought that he had killed a man.  Investigators found Browning's fingerprints in

21       the jewelry store.

22       Browning was convicted, pursuant to a jury trial, of first-degree murder with
     the use of a deadly weapon, robbery with the use of a deadly weapon, burglary, and

23       escape.  At the penalty hearing, the State presented detailed evidence of his prior
     felonies for robbery with the use of a knife.  Browning's mother testified as a

24       mitigating witness.  She stated that Browning attended private school as a child, was
     a very good student and president of the student council, and was very athletically

25       inclined, winning medals in cross-country.  She had marital problems, and she and
     Browning moved to Washington, D.C., where he worked as a doorman for the United

26       States Congress and took paralegal classes at the Library of Congress.  After
     Browning left high school, she had not had much contact with him, but she knew that

1    he was very remorseful for the crimes.  Browning spoke in allocution and stated that
     his involvement with drugs was the reason he was implicated in the crimes.  He
2    apologized for the pain that the Elsen and Browning families had suffered.  He stated
     that he did not want to die and that he was innocent.
3
              The jury found five aggravating circumstances: the murder was committed
4    while Browning was engaged in a burglary; the murder was committed while he was
     engaged in a robbery; he was previously convicted of a felony involving the use or
5    threat of violence; the murder was committed while he was under a sentence of
     imprisonment; and the murder involved depravity of mind.  The jury did not find any
6    mitigating circumstances and returned a sentence of death.

7    *Browning v. State*, 120 Nev. 347, 352-53, 91 P.3d 39, 43-44 (2004).

8         Browning appealed, and, on June 24, 1988, the Nevada Supreme Court affirmed.  *Browning*

9    *v. State,* 104 Nev. 269, 757 P.2d 351 (1988) (a copy of the opinion is in the record at Respondents'

10   Exhibit 91 (ECF No. 59-65, pp. 2-8)).[1]  The Nevada Supreme Court denied Browning's petition for

11   rehearing on August 16, 1988.  Respondents' Exhibit 97 (ECF No. 59-67, p. 2).

12        On May 17, 1989, Browning filed, in the state district court, a petition for post-conviction

13   relief and for evidentiary hearing.  Respondents' Exhibit 105 (ECF Nos. 59-68, 59-69, 59-70).

14   An evidentiary hearing was held.  Respondents' Exhibits 161, 179-83 (ECF Nos. 59-102, 59-103,

15   59-128 through 59-150).  Browning's petition was denied.  Respondents' Exhibits 208, 230 (ECF

16   Nos. 59-167, pp. 18-19, and 59-171).

17        Browning appealed, and, on June 10, 2004, the Nevada Supreme Court affirmed in part,

18   vacated in part, and remanded the case to the state district court for further proceedings.  *Browning*

19   *v. State*, 120 Nev. 347, 91 P.3d 39 (2004) (copy in the record at Respondents' Exhibit 264 (ECF No.

20   59-184, pp. 18-51)).  The court ruled that Browning's appellate counsel had been ineffective for

21   failing to challenge the aggravating circumstance of "depravity of mind," and, therefore, vacated

22   Browning's death sentence and remanded the case for a new penalty hearing.  *Id*.

23        On the remand from the Nevada Supreme Court, Browning's new penalty hearing was

24   conducted, before a jury, from April 10 through 14, 2006.  Respondents' Exhibits 335-45 (ECF Nos.

25

26   _____
          [1]  The exhibits referred to in this order as "Respondents' Exhibits" were filed by respondents,
     and are located in the record at ECF Nos. 59 and 119.

                                                    3

59-159 - 59-204).  The jury returned a verdict imposing the sentence of death, and a judgment imposing the death sentence was entered on August 22, 2006.  Exhibit 343 (ECF No. 59-201, p. 34)(verdict); Exhibit 360 (ECF No. 59-205, pp. 45-47) (judgment).

Browning appealed.  On July 24, 2008, the Nevada Supreme Court affirmed.  *Browning v. State*, 124 Nev. 517, 188 P.3d 60 (2008) (a copy of the opinion is in the record at Respondents' Exhibit 384 (ECF No. 119-3, pp. 4-37)).  The Nevada Supreme Court denied Browning's petition for rehearing on October 22, 2008.  Respondents' Exhibit 386 (ECF No. 119-3, p. 51).  On December 26, 2008, the Nevada Supreme Court denied a motion by Browning to recall the remittitur.  Respondents' Exhibit 389 (ECF No. 119-3, p. 61).

On February 10, 2005, Browning initiated this federal habeas corpus action by filing a pro se habeas petition (ECF No. 1).  The court appointed the Federal Public Defender (FPD) to represent Browning, and counsel appeared on his behalf on August 18, 2005 (ECF Nos. 7, 10, 11).  As Browning's re-sentencing was then pending, on February 9, 2007, the court entered an order that this action would proceed with regard to guilt phase issues only (ECF No. 25).  Browning amended his habeas petition on August 26, 2008 (ECF No. 48), and again on November 5, 2008 (ECF No. 54).  On July 7, 2009, after Browning's re-imposed death sentence was affirmed on appeal, the court granted Browning leave to file a third amended petition, containing all known claims for relief, including any related to the newly-imposed death sentence (ECF No. 78).  Browning filed his third amended petition on October 19, 2009 (ECF No. 83).

On February 10, 2010, the FPD filed a motion to withdraw from their representation of Browning (ECF No. 90).  That motion was granted, and the FPD withdrew on March 22, 2010 (ECF No. 96).  On April 7, 2011, the court appointed new counsel for Browning (ECF Nos. 102, 103, 104).  On October 14, 2011, Browning filed a fourth amended petition (ECF No. 111), and on November 28, 2011, Browning filed a fifth amended petition (ECF No. 115).

On March 7, 2012, respondents filed an answer to the fifth amended petition (ECF No. 122).  On August 24, 2012, Browning filed a reply (ECF No. 131).  On November 26, 2012, respondents

4

filed a response to the reply (ECF No. 150).  When Browning filed his reply, on August 24, 2012, he also filed four motions:  a motion for summary judgment (ECF No. 132), a motion to expand the record (ECF No. 133), a motion for leave to conduct discovery (ECF No. 134), and a motion for evidentiary hearing (ECF No. 135).

On September 10, 2012, respondents filed an opposition to the motion to expand the record (ECF Nos. 136, 137).

On September 19, 2012, respondents filed an opposition to the motion for summary judgment (ECF No. 139), together with a motion to strike the motion for summary judgment (ECF No. 140).  Browning filed a statement of undisputed facts with respect to the summary judgment motion on October 3, 2012 (ECF No. 144).  On October 5, 2012, Browning filed a reply in support of the motion for summary judgment, as well as an opposition to the motion to strike the motion for summary judgment (ECF No. 145).

On November 26, 2012, respondents filed an opposition to the motion for leave to conduct discovery (ECF No. 148).  Browning filed a reply in support of that motion on December 31, 2012 (ECF No. 154).

On November 26, 2012, respondents filed an opposition to the motion for evidentiary hearing (ECF No. 149), and Browning filed a reply in support of that motion on December 31, 2012 (ECF No. 153).

On December 31, 2012, Browning filed his motion to strike, or, alternatively, for evidentiary hearing (ECF No. 156).  On January 14, 2013, respondents filed a motion for extension of time for their response to that motion (ECF No. 157), and on January 18, 2013, respondents filed an opposition to it (ECF No. 158).

The Motion for Summary Judgment and The Motion to Strike the Motion for Summary Judgment

In the motion for summary judgment, Browning seeks summary judgment with respect to one claim, a part of Claim 4 of his fifth amended habeas petition, and he asserts that "[t]he writ of habeas corpus should issue ordering Petitioner released from custody unless the State of Nevada

1    affords him a new trial within a reasonable time."  Motion for Summary Judgment (ECF No. 132),

2    p. 16.

3          The motion for summary judgment adds nothing to this litigation.  By its nature, habeas

4    corpus litigation is most often "summary" to begin with, in that a trial, or evidentiary hearing, is

5    often unnecessary.  In this district, by local practice, the parties brief the merits of the petitioner's

6    claims in the petition, answer, reply, and, often, as in this case, a response to the reply.  In this case,

7    that briefing has been completed, and is before the court.  There is no need for the motion for

8    summary judgment.

9          The court will deny the motion for summary judgment, without prejudice to Browning's

10   assertion of the same arguments in his fifth amended petition, and his reply.  Moreover, the court

11   will consider the arguments made by both parties with respect to the summary judgment motion in

12   its consideration of the merits of Claim 4.

13         The denial of the motion for summary judgment renders respondents' motion to strike the

14   summary judgment motion moot, and that motion will be denied on that basis.

15   Browning's Motion to Expand the Record

16         By the motion to expand the record, Browning seeks to expand the record in the case to

17   include the "Appendix to Appellate Opening Brief to the Nevada Supreme Court, Case No. 390063"

18   ("Appendix").

19         Browning acknowledges that "many if not all of the documents in this Appendix are part of

20   the record in other forms," but he states that "they are referenced in the state briefing in this

21   Appendix, so supplementation of the record with this Appendix would facilitate the Court's review

22   of the preservation issues raised by Respondent."  Petitioner's Motion to Expand the Record

23   (ECF No. 133), p. 1.

24         Browning does not point to any particular part of the Appendix that necessarily must be

25   added to the record in this case, in order to facilitate the court's resolution of the issues before it.

26

1    It appears to the court that the proposed expansion of the record is unnecessary, and would only

2    serve to complicate matters by adding unnecessarily to the already voluminous record in this case.

3            The court will deny the motion to expand the record.  If upon further consideration of

4    Browning's claims, the court determines that the suggested expansion of the record is necessary, the

5    court will inform the parties and request submission of the necessary materials.

6    Browning's Discovery Motion

7            In Browning's motion for leave to conduct discovery, he seeks leave of court to conduct the

8    following discovery:

9            -    to serve upon respondents a set of 151 requests for admissions;

10           -    to serve upon respondents interrogatories regarding their bases for denying
                  any of the requests for admissions;

11
12           -    to serve upon respondents interrogatories and requests for production,
                  regarding the whereabouts of potential witness Marsha Gaylord, regarding the
                  continuance of Browning's trial from March 3 to March 28, 1986, and
13                regarding contacts with witnesses Randall and Vanessa Wolfe;

14           -    to take depositions of Daniel Seaton, Gregory James Branon, and
                  David Randall Horn, regarding communications about Branon's
15                observations at the scene of the murder;

16           -    to take depositions, and/or conduct an examination under Federal Rule
                  of Civil Procedure 35, to determine the shoe sizes of Josy Elsen and
17                Debra Coe;

18           -    "to inspect, copy and test, pursuant to FRCP 34, all evidence gathered
                  or generated by the Las Vegas Police Department or the Clark County
19                District Attorneys' office, including physical evidence, photographs,
                  recordings, videos, statements, reports, notes, and any other
20                documentary or physical evidence found at the scene of the murder, at
                  the scene of Paul Browning's arrest, or in connection with the
21                investigation of the murder or associated robbery."

22   *See* Discovery Motion (ECF No. 134), pp. 1-4 (quoted portion at p. 4, lines 15-20).

23           In the proposed requests for admissions, Browning picks out, from the decisions of the

24   Nevada Supreme Court in his case, what he considers to be factual findings that support his claims,

25   and he requests that the respondents admit to those factual findings.  *See* "Petitioner's [Proposed]

26   Requests for Admission of Favorable State Court Findings and Conclusions" (ECF no. 134-1).

1   Browning then proposes that he be allowed to serve interrogatories on respondents requiring them to

2   explain their basis for denying any of the requests for admissions.  *See* Discovery Motion, p. 2,

3   item 2.  The court finds this suggested discovery to be unnecessary, inappropriate, and possibly

4   unduly oppressive.  There is no showing of good cause for this discovery under Rule 6 of the Rules

5   Governing Section 2254 Cases in the United States District Courts.

6          The proposed discovery concerning the whereabouts of Marsha Gaylord relates to Claims 2

7   and 3 in the fifth amended petition, both of which allege constitutional violations related to the

8   continuance of Browning's trial.  *See* Fifth Amended Petition (ECF No. 115), pp. 24-37.  In Claims

9   2 and 3, Browning asserts that he was prejudiced by the allegedly improper continuance because

10  during the continuance Gaylord became unavailable as a witness.  Over the years since his

11  conviction, on his direct appeal and in a state-court habeas action, Browning has raised claims

12  concerning the continuance, and the Nevada Supreme Court has twice ruled on such claims.  *See*

13  *Browning v. State*, 104 Nev. 269, 271, 757 P.2d 351, 352 (1988); *Browning v. State*, 120 Nev. 347,

14  366, 91 P.3d 39, 53 (2004).  Those rulings turned, at least to some extent, on the Nevada Supreme

15  Court's judgment that Browning did not sufficiently demonstrate prejudice.  *See Browning*, 104

16  Nev. at 271, 757 P.2d at 352 ("Moreover, Browning has not reasonably identified how the twenty-

17  eight day delay has prejudiced his defense."); *Browning*, 120 Nev. at 366, 91 P.3d at 53

18  ("Browning's claim is without merit because he still fails to demonstrate prejudice."); *see also*

19  Petitioner's Reply to Respondent's Answer ("Reply") (ECF No. 131), pp. 58-59 (describing

20  Browning's attempts at a state-court evidentiary hearing to show that he was prejudiced by the

21  continuance).  The litigation of those claims in state court goes back 25 years.  It is there, in state

22  court, that Browning should have done this sort of discovery, and should have developed and

23  presented any available evidence showing that he was prejudiced by the continuance.  *See Cullen v.*

24  *Pinholster*, 131 S.Ct. 1388, 1398 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that

25  was before the state court that adjudicated the claim on the merits.").  There is no showing of good

26

1   cause for Browning to undertake this discovery now, in federal court.  *See* Rule 6 of the Rules

2   Governing Section 2254 Cases in the United States District Courts.

3          The proposed discovery concerning Gregory James Branon's observations at the scene of the

4   Elsen murder, and the proposed discovery concerning the shoe sizes of Josy Elsen and Debra Coe,

5   relate to Browning's claim, in Claim 1 of the fifth amended petition, that his trial counsel allegedly

6   did not do sufficient pretrial investigation regarding bloody shoe prints found at the scene of the

7   murder, and his claim in Claim 4 that the prosecutor allegedly withheld evidence, or offered

8   misleading or false evidence, regarding those bloody shoe prints.  *See* Fifth Amended Petition,

9   pp. 9-10, 39-40.  Here again, Browning has raised such claims in state court, and the state courts

10  ruled on those claims.  *See Browning*, 120 Nev. at 356, 91 P.3d at 46.  The extensive discovery now

11  proposed by Browning with respect to these issues should have been done in state court.  Browning

12  has not shown good cause for this discovery to be undertaken now, in the first instance, in this

13  federal habeas corpus action.  *See* Rule 6 of the Rules Governing Section 2254 Cases in the United

14  States District Courts.

15         Finally, the last category of discovery proposed by Browning -- "to inspect, copy and test,

16  pursuant to FRCP 34, all evidence gathered or generated by the Las Vegas Police Department or the

17  Clark County District Attorneys' office, including physical evidence, photographs, recordings,

18  videos, statements, reports, notes, and any other documentary or physical evidence found at the

19  scene of the murder, at the scene of Paul Browning's arrest, or in connection with the investigation

20  of the murder or associated robbery" -- is completely without justification, and is far too undefined

21  and broad to be undertaken in this federal habeas corpus action.  This is not the proper forum for

22  Browning to undertake, more than 25 years after his conviction, such wide-ranging, unfocused

23  discovery.  "Federal courts sitting in habeas are not an alternative forum for trying facts and issues

24  which a prisoner made insufficient effort to pursue in state proceedings."  *Williams v. Taylor*, 529

25  U.S. 420, 437 (2000); *see also Harrington v. Richter*, 131 S.Ct. 770, 787 (2011) ("[S]tate courts are

26  the principal forum for asserting constitutional challenges to state convictions"); *Wainwright v.*

1   *Sykes*, 433 U.S. 72, 90 (1977) ("[T]he state trial on the merits [should be] the 'main event,' so to

2   speak, rather than a 'tryout on the road' for what will later be the determinative federal habeas

3   hearing.").  There is no showing of good cause for this discovery, under Rule 6 of the Rules

4   Governing Section 2254 Cases in the United States District Courts.

5       The court will deny the motion for leave to conduct discovery.

6   Browning's Motion for Evidentiary Hearing

7       In the motion for evidentiary hearing, Browning requests an evidentiary hearing, "[i]n the

8   event the Court finds that any of Petitioner's claims are barred by state procedural defaults, or that

9   evidence offered in support of his claims is inadmissible under 28 U.S.C. §2254(e) and *Keeney v.*

10  *Tamayo-Reyes*, 504 U.S. 1, 5, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992)."  Motion for Evidentiary

11  Hearing (ECF No. 135), p. 2.  "In the event the Court finds procedural default in the failure to raise

12  an issue at trial, Petitioner requests a hearing on whether 'cause' for that default exists as a result of

13  trial counsel's ineffectiveness or the state's withholding or misrepresentation of evidence, either of

14  which can excuse a procedural default."  *Id*.  Browning continues:  "In the event the Court finds a

15  bar resulting from the failure of Petitioner's appellate counsel to timely or properly raise issues

16  bearing on Petitioner's claim of ineffective counsel on appeal."  *Id*. (sentence fragment as in

17  original).  And:  "If the Court finds the default occurred in postconviction proceedings, Petitioner

18  requests a hearing on ineffective assistance of counsel in postconviction proceedings as cause for

19  such default."  *Id*. at 3.  And finally:  "If the Court finds no cause for any procedural default that bars

20  all or part of any of Petitioner's claims, Petitioner requests an evidentiary hearing on whether

21  imposing the bar would result in a miscarriage of justice because he is actually innocent of the crime

22  of which he has been convicted."  *Id*.

23      In Browning's pro forma motion for evidentiary hearing, he does not specify any particular

24  factual issue on which he requests an evidentiary hearing, and he does not describe what evidence he

25  would offer at such an evidentiary hearing.  The motion is meritless, and the court will deny it.

26

10

Browning's Motion to Strike or Supplement Evidentiary Hearing Request

In the motion to strike or supplement evidentiary hearing request, Browning takes issue with certain assertions made by respondents in their response to his reply (ECF No. 150), Browning makes contrary arguments, and he argues that respondents' assertions "should be stricken as untimely or inconsistent with [the] state record, or if not should themselves be subjected to an evidentiary hearing." Motion to Strike or Supplement Evidentiary Hearing Request (ECF No. 156), p. 2, lines 6-7.

The court finds that the respondents' motion to extend the time for their response to this motion was made in good faith and not solely for the purpose of delay, and that there is good cause for the extension of time that they request. The court will grant respondents' motion for extension of time (ECF No. 157), and will, accordingly, treat their opposition to this motion as timely filed.

As a motion to strike or a motion for evidentiary hearing, the court finds Browning's motion to be meritless. The fact that Browning disagrees with statements made by respondents in their briefing does not provide a basis to strike that briefing. Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Browning has not shown the response to his reply to be redundant, immaterial, impertinent or scandalous. And, the fact that Browning disagrees with respondents' view of the record, as reflected in their response to his reply, without more, certainly does not give rise to a right to an evidentiary hearing. Browning's motion will be denied.

The court will, however, consider Browning's motion to strike or supplement evidentiary hearing request, as well as respondents' response to that motion, in its consideration of the merits of Browning's claims.

The briefing of Browning's claims is now complete, and the fifth amended petition is under submission to the court.

11

1         **IT IS THEREFORE ORDERED** that petitioner's motion for summary judgment

2    (ECF No. 132) is **DENIED**.

3         **IT IS FURTHER ORDERED** that respondents' motion to strike the motion for summary

4    judgment (ECF No. 140) is **DENIED**.

5         **IT IS FURTHER ORDERED** that petitioner's motion to expand the record (ECF No. 133)

6    is **DENIED**.

7         **IT IS FURTHER ORDERED** that petitioner's motion for leave to conduct discovery

8    (ECF No. 134) is **DENIED**.

9         **IT IS FURTHER ORDERED** that petitioner's motion for evidentiary hearing (ECF

10   No. 135) is **DENIED**.

11        **IT IS FURTHER ORDERED** that respondents' motion for extension of time (ECF No.

12   157) is **GRANTED**.  Respondents' opposition to the petitioner's "Motion to Strike or Supplement

13   Evidentiary Hearing Request" (ECF No. 157) shall be treated as timely filed.

14        **IT IS FURTHER ORDERED** that petitioner's "Motion to Strike or Supplement

15   Evidentiary Hearing Request" (ECF No. 156) is **DENIED**.

16

17        Dated this 24th day of January, 2013.

18

19

20                   UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

12