**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

PAUL L. BROWNING,          )
                           )
      Petitioner,       )          3:05-cv-0087-RCJ-WGC
                           )
vs.                      )
                           )
RENEE BAKER, *et al.*,      )
                           )
      Respondents.    )
                           )
_____/

Introduction

In this capital habeas corpus action, brought under 28 U.S.C. § 2254 by Paul L. Browning, a Nevada prisoner sentenced to death, there is, pending, a motion by Browning requesting oral argument (ECF No. 160).  In this order, the court denies that motion.

In addition, in this order, the court identifies claims made by Browning in his fifth amended habeas petition that have not been exhausted in state court, and the court orders Browning to make an election regarding those claims.

Background Facts and Procedural History

In its June 10, 2004, decision in Browning's case, the Nevada Supreme Court described, as follows, the factual background of the case:

On November 8, 1985, Hugo Elsen was stabbed to death during a robbery of his jewelry store in Las Vegas. His wife, Josy Elsen, was in the back of the store when he was attacked. Hearing noises, she went into the showroom and saw a black man wearing a blue cap squatting over her husband holding a knife. She fled out the back door to the neighboring store and asked the employees there to call the police. She and a neighboring employee, Debra Coe, then returned to the jewelry store where Coe placed a pillow under Elsen's head and covered him with a blanket. Two to four minutes later help arrived. Elsen soon died, after giving a very brief description of the perpetrator as a black man wearing a blue cap with loose curled wet hair. Debra Coe also described a man she had seen leaving the vicinity: he was wearing a blue cap, blue jacket, Levi's, and tennis shoes; was about 27 years old and about six-feet tall; and had hair a little longer than the cap he was wearing and a mustache. Another witness, Charles Woods, identified a person he saw leaving the vicinity as a black man wearing a dark or blue cap and dark trousers, about six-feet tall, and weighing about 180 pounds.

Shortly after the crimes, Randy Wolfe approached police and told them that a man was in Wolfe's nearby hotel room with a large amount of jewelry. The police went to the room and found Browning with the jewelry. Browning was arrested and taken to Coe and Woods for a showup identification. They identified Browning as the man they saw leaving the vicinity of the crimes.

At trial, Vanessa Wolfe, Randy Wolfe's wife, testified for the State to the following. She returned to her hotel room on the day of the crimes and found Browning taking off his clothes. He had a coat, which was either on the floor or on the bed. On the bed was a lot of jewelry with tags, which she helped cut off. Browning asked Vanessa to help him get rid of some of the jewelry and said he thought he had just killed somebody. She helped Browning by throwing the tags and his hat in a nearby dumpster. Browning gave her a knife to dispose of. Instead, she put the knife in a pizza box in a closet under the stairs. The officers assigned to Browning's case testified that they retrieved all of this evidence from the places that Vanessa described. Randy Wolfe also testified that when he went into his hotel room, Browning was sitting on the bed and said that he just robbed a jewelry store and thought that he had killed a man. Investigators found Browning's fingerprints in the jewelry store.

Browning was convicted, pursuant to a jury trial, of first-degree murder with the use of a deadly weapon, robbery with the use of a deadly weapon, burglary, and escape. At the penalty hearing, the State presented detailed evidence of his prior felonies for robbery with the use of a knife. Browning's mother testified as a mitigating witness. She stated that Browning attended private school as a child, was a very good student and president of the student council, and was very athletically inclined, winning medals in cross-country. She had marital problems, and she and Browning moved to Washington, D.C., where he worked as a doorman for the United States Congress and took paralegal classes at the Library of Congress. After Browning left high school, she had not had much contact with him, but she knew that he was very remorseful for the crimes. Browning spoke in allocution and stated that his involvement with drugs was the reason he was implicated in the crimes. He apologized for the pain that the Elsen and Browning families had suffered. He stated that he did not want to die and that he was innocent.

1

2          The jury found five aggravating circumstances: the murder was committed
          while Browning was engaged in a burglary; the murder was committed while he was
          engaged in a robbery; he was previously convicted of a felony involving the use or
3          threat of violence; the murder was committed while he was under a sentence of
          imprisonment; and the murder involved depravity of mind.  The jury did not find any
          mitigating circumstances and returned a sentence of death.

4

5    *Browning v. State*, 120 Nev. 347, 352-53, 91 P.3d 39, 43-44 (2004).

6          Browning appealed, and, on June 24, 1988, the Nevada Supreme Court affirmed.  *Browning*

7    *v. State,* 104 Nev. 269, 757 P.2d 351 (1988) (a copy of the opinion is in the record at Respondents'

8    Exhibit 91 (ECF No. 59-65)).[1]  The Nevada Supreme Court denied Browning's petition for rehearing

9    on August 16, 1988.  Respondents' Exhibit 97 (ECF No. 59-67).

10          On May 17, 1989, Browning filed, in the state district court, a petition for post-conviction

11    relief and for evidentiary hearing.  Respondents' Exhibit 105 (ECF Nos. 59-68, 59-69, 59-70).

12    An evidentiary hearing was held.  Respondents' Exhibits 161, 179-83 (ECF Nos. 59-102, 59-103,

13    59-128 through 59-150).  Browning's petition was denied.  Respondents' Exhibits 208, 230 (ECF

14    Nos. 59-167, pp. 18-19, and 59-171).

15          Browning appealed, and, on June 10, 2004, the Nevada Supreme Court affirmed in part,

16    vacated in part, and remanded the case to the state district court for further proceedings.  *Browning v.*

17    *State*, 120 Nev. 347, 91 P.3d 39 (2004) (a copy of the opinion in the record at Respondents' Exhibit

18    264 (ECF No. 59-184)).  The court ruled that Browning's appellate counsel had been ineffective for

19    failing to challenge the "depravity of mind" aggravating circumstance, and vacated Browning's death

20    sentence and remanded the case for a new penalty hearing.  *Id*.

21          On the remand, Browning's new penalty hearing was conducted before a jury from

22    April 10 through 14, 2006.  Respondents' Exhibits 335-45 (ECF Nos. 59-159 - 59-204).  The jury

23    returned a verdict imposing the sentence of death, and the judgment was entered on August 22, 2006.

24    Respondents' Exhibit 343 (ECF No. 59-201); Respondents' Exhibit 360 (ECF No. 59-205).

25

26          [1]  The exhibits referred to in this order as "Respondents' Exhibits" were filed by respondents,
     and are located in the record at ECF Nos. 59 and 119.

1    Browning appealed.  On July 24, 2008, the Nevada Supreme Court affirmed.  *Browning v.*

2    *State*, 124 Nev. 517, 188 P.3d 60 (2008) (a copy of the opinion is in the record at Respondents'

3    Exhibit 384 (ECF No. 119-3)).  The Nevada Supreme Court denied Browning's petition for

4    rehearing on October 22, 2008.  Respondents' Exhibit 386 (ECF No. 119-3).  On December 26,

5    2008, the Nevada Supreme Court denied a motion by Browning to recall the remittitur.

6    Respondents' Exhibit 389 (ECF No. 119-3).

7    On February 10, 2005, Browning initiated this federal habeas corpus action by filing a pro se

8    habeas petition (ECF No. 1).  The court appointed the Federal Public Defender (FPD) to represent

9    Browning, and counsel appeared on his behalf on August 18, 2005 (ECF Nos. 7, 10, 11).  As

10   Browning's re-sentencing was then pending, on February 9, 2007, the court entered an order that this

11   action would proceed with regard to guilt phase issues only (ECF No. 25).  Browning amended his

12   habeas petition on August 26, 2008 (ECF No. 48), and again on November 5, 2008 (ECF No. 54).

13   On July 7, 2009, after Browning's re-imposed death sentence was affirmed on appeal, the court

14   granted Browning leave to file a third amended petition, containing all known claims for relief,

15   including any related to the newly-imposed death sentence (ECF No. 78).  Browning filed his third

16   amended petition on October 19, 2009 (ECF No. 83).

17   On February 10, 2010, the FPD filed a motion to withdraw from their representation of

18   Browning (ECF No. 90).  That motion was granted, and the FPD withdrew on March 22, 2010

19   (ECF No. 96).  On April 7, 2011, the court appointed new counsel for Browning (ECF Nos. 102,

20   103, 104).  On October 14, 2011, Browning filed a fourth amended petition (ECF No. 111), and on

21   November 28, 2011, Browning filed a fifth amended petition (ECF No. 115).

22   On March 7, 2012, respondents filed an answer to the fifth amended petition (ECF No. 122).

23   On August 24, 2012, Browning filed a reply (ECF No. 131).  On November 26, 2012, respondents

24   filed a response to the reply (ECF No. 150).

25   When Browning filed his reply, on August 24, 2012, he also filed four motions:  a motion for

26   summary judgment (ECF No. 132), a motion to expand the record (ECF No. 133), a motion for leave

to conduct discovery (ECF No. 134), and a motion for evidentiary hearing (ECF No. 135).  On September 19, 2012, respondents filed a motion to strike the motion for summary judgment (ECF No. 140). On December 31, 2012, Browning filed a motion to strike, or, alternatively, for evidentiary hearing (ECF No. 156).  In an order entered on January 24, 2013, the court denied each of those motions (ECF No. 159).

On January 30, 2013, Browning filed his "Motion and Memorandum for Oral Argument on Petitioner's Fifth Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody" (ECF No. 160)  ("Motion for Oral Argument").  Respondents filed an opposition to that motion on February 19, 2013 (ECF No. 161).

Motion for Oral Argument

The court will deny Browning's motion for oral argument.

There is on file an extraordinary amount of written briefing regarding the merits of Browning's claims.  The court has the benefit of Browning's 109-page fifth amended habeas petition (ECF No. 115), respondents' 90-page answer (ECF No. 122), Browning's 194-page reply (ECF No. 131), and respondents' 59-page response to reply (ECF No. 150).  In addition, in the order entered on January 24, 2013 (ECF No. 159), the court stated that it will consider, with respect to the merits of Browning's claims, the briefing of the parties concerning Browning's motion for summary judgment (ECF Nos. 132, 139, 145), as well as the briefing of the parties concerning Browning's motion to strike, or, alternatively, for evidentiary hearing (ECF Nos. 156, 158).  The court finds, generally, that the parties' positions are set forth completely and clearly in the written briefing, and the court does not, at this point, expect that oral argument will be necessary.

If, after the matter of Browning's unexhausted claims is resolved (*see* discussion below), and upon closer consideration of the briefing, the court determines that oral argument will be helpful, the court will notify the parties of such and will schedule oral argument.

Exhaustion

In their answer to Browning's fifth amended habeas petition, respondents take the position that several of Browning's claims are unexhausted.

A federal court may not grant habeas corpus relief on a claim not exhausted in state court. 28 U.S.C. § 2254(b). The exhaustion doctrine is based on the policy of federal-state comity, and is intended to allow state courts the initial opportunity to correct constitutional deprivations. *See Picard v. Conner*, 404 U.S. 270, 275 (1971). To exhaust a claim, a petitioner must fairly present the claim to the highest state court, and must give that court the opportunity to address and resolve it. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*per curiam*); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).

The court has carefully examined the record to determine the status of each of Browning's claims, vis-a-vis the exhaustion of each claim in state court. The court sets forth its findings in this regard below, and directs Browning to make an election with respect to his unexhausted claims.

Claim 1

In Claim 1, Browning claims that he was denied effective assistance of counsel before trial in violation of his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, because his counsel "failed to do the investigation necessary to confront the prosecution's case or to prepare and present the defense case at trial." *See* Fifth Amended Petition for Writ of Habeas Corpus (ECF No. 115), p. 7. Claim 1 includes several distinct subclaims, each based upon different factual assertions regarding the alleged shortcomings of counsel's pretrial investigation.

To fairly present a claim in state court, in order to satisfy the exhaustion requirement, the petitioner must describe the operative facts and federal legal theory on which the claim is based, so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon the claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *see also Rose v. Palmateer*, 395 F.3d 1108, 1111 (9th Cir. 2005) ("In addition to requiring specificity in pleading the federal nature of a

claim, we also require a petitioner to articulate the substance of an alleged violation with some particularity.")

A petitioner's assertion, in state court, of a claim of ineffective assistance of counsel based on one set of facts does not exhaust other claims of ineffective assistance of counsel based on different facts not presented to the state courts. *Moormann v. Schriro*, 426 F.3d 1044, 1056-57 (9th Cir. 2005), *cert. denied*, 548 U.S. 927 (2006) (new allegations of ineffective assistance of counsel not previously raised before the state court ruled unexhausted); *Date v. Schriro*, 619 F.Supp.2d 736, 788 (D.Ariz. 2008).

In Claim 1, Browning first makes allegations regarding the pretrial investigation that his counsel did do, and the amount of time that it took counsel to do that work, essentially asserting, in a general manner, that counsel was ineffective because he did not perform adequate investigation. Fifth Amended Petition for Writ of Habeas Corpus, pp. 7-9, ¶¶ 5.1- 5.6.  Browning made such an assertion before the Nevada Supreme Court, on his appeal from the denial of his state-court habeas petition; this general claim of ineffective investigation is exhausted. *See*, *e.g.*, Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), pp. 39-41.

Browning next claims, in paragraphs 5.7 through 5.7.3 of Claim 1, that his counsel was ineffective for not adequately investigating bloody shoe prints found at the scene of the murder. Fifth Amended Petition for Writ of Habeas Corpus, pp. 9-10, ¶¶ 5.7- 5.7.3.  This claim has been exhausted in state court. *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), p. 43.

Browning claims, in paragraphs 5.8 through 5.8.2 of Claim 1, that his counsel was ineffective for failing to adequately investigate blood found on a jacket that allegedly belonged to Browning. Fifth Amended Petition for Writ of Habeas Corpus, pp. 10-11, ¶¶ 5.8- 5.8.2.  Respondents argue that this claim is unexhausted. *See* Answer (ECF No. 122), pp. 40-42.  Browning did, however, make such a claim to the Nevada Supreme Court. *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), p. 23, n.11; Appellant's Reply Brief, Respondents' Exhibit

251 (ECF No. 59-180 and 59-181), pp. 15-16.  This claim has, therefore, been exhausted in state court.

Next, in paragraphs 5.9 through 5.9.7 of Claim 1, Browning claims that his counsel was ineffective for not sufficiently investigating Randall and Vanessa Wolfe, two witnesses for the prosecution.  Fifth Amended Petition for Writ of Habeas Corpus, pp. 11-13, ¶¶ 5.9- 5.9.7.  This claim has been exhausted in state court.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), pp. 43, 47-48.

In paragraphs 5.10 through 5.10.4 of Claim 1, Browning claims that his counsel was ineffective for not sufficiently doing investigation that would have prepared him to challenge the in-court identification of Browning by the murder victim's wife, Josy Elsen.  Fifth Amended Petition for Writ of Habeas Corpus, pp. 13-15, ¶¶ 5.10-5.10.4.  Specifically, Browning asserts in this part of Claim 1 that his counsel failed to interview Josy Elsen and failed to investigate her ability to view the murderer.  *Id*.  This claim has been exhausted in state court.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), pp. 43, 45-46.

Next, in paragraphs 5.11 through 5.11.3 of Claim 1, Browning claims that his counsel was ineffective for failing to conduct a pretrial interview of witness Debra Coe, and for failing to investigate the circumstances of her observations.  Fifth Amended Petition for Writ of Habeas Corpus, pp. 15-16, ¶¶ 5.11-5.11.3.  Respondents argue that this claim is unexhausted.  *See* Answer, pp. 46-47.  In response, in his reply, Browning acknowledges that counsel did, in fact, interview Debra Coe, and Browning therefore abandons the claim that counsel was ineffective for failing to conduct such interview.  Reply (ECF No. 131), p. 34, lines 5-10.  This leaves, in this part of Claim 1, the claim that counsel was ineffective for failing to investigate the circumstances of Debra Coe's observations.  Before the Nevada Supreme Court, Browning made a closely related claim: that counsel was ineffective for failing to properly cross-examine and impeach Debra Coe.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), pp. 48-49.  The court finds that the claim regarding the alleged insufficient investigation of the

1  circumstances of Debra Coe's observations is closely enough related to the claim made in state court

2  that this claim is exhausted.

3         In paragraphs 5.12 through 5.12.4 of Claim 1, Browning claims that his counsel was

4  ineffective for failing to conduct pretrial investigation regarding the knife that allegedly was used

5  by Browning to kill Hugo Elsen.  Fifth Amended Petition for Writ of Habeas Corpus, pp. 16-18,

6  ¶¶ 5.12-5.12.4.  Respondents argue that this claim is unexhausted.  *See* Answer, pp. 47-48.  In

7  response, Browning argues:

8         Respondent says this part of this claim has not been exhausted but it has.  It is
       another consequence of the lack of investigation, and the same points were raised in
9         the state postconviction briefs  [Dkt. 59, Exh. 232 at 24, 33].

10  Reply (ECF No. 131), p. 36, lines 19-22.  However, Browning's citation to pages 24 and 33 of his

11  opening brief before the Nevada Supreme Court is perplexing.  Those pages are not in the part of the

12  brief dealing with alleged ineffective assistance of counsel, but rather are in the part of the brief

13  dealing with alleged prosecutorial misconduct.  Moreover, there is no assertion on pages 24 and 33

14  of that brief that counsel was ineffective for failing to adequately investigate the knife; in fact, there

15  is no mention whatsoever of the knife on those pages of the opening brief.  *See* Appellant's Opening

16  Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), pp. 24, 33.  The court finds that

17  the claim that Browning's counsel failed to conduct sufficient investigation of the knife was not

18  presented to the Nevada Supreme Court and is unexhausted.  *See* Appellant's Opening Brief,

19  Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175); Appellant's Reply Brief,

20  Respondents' Exhibit 251 (ECF No. 59-180 and 59-181).

21         In paragraphs 5.13 through 5.13.4 of Claim 1, Browning claims that counsel was ineffective

22  for failing to interview Officer Branon before trial, regarding Hugo Elsen's description of the

23  murderer.  Fifth Amended Petition for Writ of Habeas Corpus, pp. 18-19, ¶¶ 5.13-5.13.4.  This claim

24  has been exhausted in state court.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF

25  No. 59-173, 59-174, 59-175), pp. 43-45.

26

1    In paragraphs 5.14 through 5.14.5 of Claim 1, Browning claims that counsel was ineffective

2    for failing to conduct investigation regarding certain aspects of Browning's alleged connection to the

3    crime scene.  Fifth Amended Petition for Writ of Habeas Corpus, pp. 19-20, ¶¶ 5.14-5.14.5.

4    Specifically, in this part of Claim 1, Browning alleges:

5    -    "The lack of investigation prevented Mr. Pike [Browning's trial counsel] from
          knowing, and the jury from hearing, that the police examined Mr. Browning's
6         shoes and his body for cuts, scrapes or any other injuries that might be
          consistent with the broken glass and/or blood; and nothing was found."

7
     -    The lack of investigation prevented Mr. Pike from knowing, and the jury from
8         learning, that the Las Vegas Police Department specifically requested the
          Las Vegas Crime Lab to test Mr. Browning's clothes, with no results tying
9         Mr. Browning to the crime scene."

10   -    "The lack of investigation prevented Mr. Pike from knowing, and the jury
          from learning, that not a single state witness observed any blood on
11        Mr. Browning."

12   -    "The lack of investigation further prevented Mr. Pike from knowing, and the
          jury from learning, that no one observed Mr. Browning carrying anything in
13        his hands, such as jewelry or the three foot-long jewelry trays."

14   *Id.*, ¶¶ 5.14.1-5.14.4.  Respondents argue that this claim is not exhausted.  *See* Answer, pp. 49-51.

15   A review of the briefing presented to the Nevada Supreme Court reveals that only a very limited

16   portion of these claims is exhausted, that being the claims that counsel was ineffective for failing to

17   do investigation to discover that Debra Coe did not see blood on Browning and did not see him

18   carrying anything in his hands, such as jewelry or the three foot-long jewelry trays.  *See* Appellant's

19   Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), p. 49 ("Although

20   counsel cross-examined Coe regarding the fact that she was not positive about her earlier

21   identification of Mr. Browning, she was never asked whether she observed any blood on the man, or

22   whether he was carrying any jewelry cases.").  Beyond that, however, the remainder of the claims in

23   paragraphs 5.14 through 5.14.5 are unexhausted.  Browning did not assert before the Nevada

24   Supreme Court that his counsel was ineffective for failing to do investigation to discover "that the

25   police examined Mr. Browning's shoes and his body for cuts, scrapes or any other injuries that might

26   be consistent with the broken glass and/or blood; and nothing was found," for failing to

10

do investigation to discover "that the Las Vegas Police Department specifically requested the Las Vegas Crime Lab to test Mr. Browning's clothes, with no results tying Mr. Browning to the crime scene," or for failing to do investigation to discover that witnesses -- other than Debra Coe -- did not observe blood on Browning and did not observe him carrying anything in his hands, such as jewelry or the three foot-long jewelry trays.  Those claims, in paragraphs 5.14 through 5.14.5 of Claim 1, are unexhausted.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175); Appellant's Reply Brief, Respondents' Exhibit 251 (ECF No. 59-180 and 59-181).

In paragraph 5.15 of Claim 1, Browning claims that his trial counsel was ineffective for failing to ensure the presence of Marsha Gaylord as a witness at trial or for failing to preserve her testimony for use at trial.  Fifth Amended Petition for Writ of Habeas Corpus, pp. 20-21, ¶ 5.15.  Respondents argue that this claim is unexhausted.  *See* Answer, pp. 51-52.  However, as Browning points out in his reply (Reply, pp. 43-44), this claim was raised before the Nevada Supreme Court.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), p. 57, lines 4-5, and n.30.  This claim has been exhausted in state court.

In paragraphs 5.16 through 5.16.4, Browning claims that his counsel was ineffective for not, before trial, interviewing Randall and Vanessa Wolfe, Thomas Stamps, and Mike Hines, regarding the alleged sale of the stolen jewelry at a gold exchange.  Fifth Amended Petition for Writ of Habeas Corpus, p. 21, ¶¶ 5.16-5.16.4.  Respondents argue that this claim is unexhausted.  *See* Answer, pp. 52-54.  Browning did, though, raise this claim before the Nevada Supreme Court, with respect to Randall and Vanessa Wolfe, and Thomas Stamps.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), pp. 42-43 n.22, and pp. 47-48.  Browning did not, however, raise this claim before the Nevada Supreme Court with respect to Mike Hines. *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175); Appellant's Reply Brief, Respondents' Exhibit 251 (ECF No. 59-180 and 59-181).  The claim that

1  counsel was ineffective for failing to locate and interview Mike Hines regarding the sale of the stolen

2  jewelry is unexhausted in state court.

3      In paragraphs 5.17 through 5.18.3, Browning claims that his counsel was ineffective for

4  failing to conduct a pretrial interview of Kathy Adkins, an identification specialist with the

5  Las Vegas Metropolitan Police Department, and a witness for the prosecution at Browning's trial,

6  and for failing to conduct pretrial investigation to discover the existence of a sketch of the Wolfes'

7  motel room showing the location of each item recovered there.  Fifth Amended Petition for Writ of

8  Habeas Corpus, pp. 21-22, ¶¶ 5.17-5.17.1.  Respondents argue that this claim is unexhausted.

9  *See* Answer, pp. 52-54.  This claim was not presented to the Nevada Supreme Court, and is

10 unexhausted.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174,

11 59-175); Appellant's Reply Brief, Respondents' Exhibit 251 (ECF No. 59-180 and 59-181).

12     In paragraph 5.19, Browning claims that his counsel was ineffective for failing to investigate

13 the conditions at the police station that he alleges provided a valid defense to the escape charge.

14 Fifth Amended Petition for Writ of Habeas Corpus, p. 23, ¶ 5.19.  Browning raised this claim before

15 the Nevada Supreme Court.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-

16 173, 59-174, 59-175), pp. 59-60.  This claim has been exhausted in state court.

17     Claim 2

18     In Claim 2 of his fifth amended habeas petition, Browning claims:

19          The prosecution improperly sought, and the trial court improperly granted, a
            continuance which caused the loss of Mr. Browning's primary defense witness,
20          Ms. Marsha Gaylord.  The continuance was granted in violation of the procedures and
            intended protections dictated by the holdings in *Hill v. Sheriff*, 85 Nev. 234, 452 P.2d
21          918 (Nev. 1969), *Bustos v. Sheriff*, 87 Nev. 622, 491 P.2d 1279 (Nev. 1971),
            and the Eighth Judicial District Court Rule 14 (E.D.C.R. 14).  This violation of
22          Mr. Browning's state guaranteed rights denied him due process and equal protection
            in violation of his rights under the Sixth and Fourteenth Amendment.

23

24 Fifth Amended Petition for Writ of Habeas Corpus, p. 24; *see also id*. at 24-31.  Browning has

25 presented this claim to the Nevada Supreme Court, and it is, therefore, exhausted in state court.

26

1   *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175),

2   pp. 70-78.

3   <u>Claim 3</u>

4   The introductory paragraph in Claim 3 of Browning's fifth amended habeas petition states:

5    The prosecution, in bad faith, improperly sought a continuance of
     Mr. Browning's trial by a ruse.  The trial court improperly granted the prosecution's

6   request, over defense objection.  A key defense witness was available and willing to
     testify at the trial; however, because of the improper continuance the witness became

7   unavailable, denying Mr. Browning his right to compel witnesses and present
     evidence at trial, guaranteed by the Sixth and Fourteenth Amendments.

8

9   Fifth Amended Petition for Writ of Habeas Corpus, p. 32, lines 4-10.  The concluding paragraph of

10  Claim 3 similarly claims "[t]he improper continuance thus denied Mr. Browning the right to call

11  witnesses in his behalf, present a defense, and fully challenge the prosecution's allegations."  *Id*. at p.

12  37, lines 3-5.  Notwithstanding this language in the introductory and concluding paragraphs of the

13  claim, Browning, in his reply characterizes Claim 3 as a claim "that the grant of the prosecution's

14  continuance requests violated Mr. Browning's Sixth Amendment speedy trial rights."  Reply, p. 65,

15  lines 6-8.  In their response to the reply, respondents accept the characterization of the claim as a

16  claim of violation of Browning's Sixth Amendment speedy trial rights.  Response to Reply (ECF No.

17  150), pp. 10-12.  Both Browning and the respondents have briefed the speedy trial issue.  *See*  Reply,

18  p. 65, lines 6-8; Response to Reply, pp. 10-12; *see also* Reply, pp. 65-68.  The parties' reading of

19  Claim 3 is not completely unsupported by the language in Claim 3; Claim 3 does include discussion

20  of the Nevada Supreme Court's ruling, on Browning direct appeal, on a claim of violation of his

21  federal constitutional speedy trial rights.  *See* Fifth Amended Petition for Writ of Habeas Corpus, pp.

22  33-34, ¶¶ 5.36-5.36.3.  The court, therefore, construes Claim 3 as a claim of violation of Browning's

23  speedy trial rights under the Sixth Amendment, and determines that claim was exhausted in state

24  court on Browning's direct appeal.  *See* Appellant's Opening Brief, Respondents' Exhibit 84 (ECF

25  No. 59-59), pp. 8-14; Appellant's Supplemental Opening Brief, Respondents' Exhibit 87 (ECF No.

26  59-61), pp. 1-10.

Claim 4

In Claim 4 of his fifth amended habeas petition, Browning claims:

> The prosecution failed to provide Mr. Browning with all relevant, material and exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and its progeny.  Additionally, the prosecution allowed testimony that was misleading or false to go uncorrected in breach of *Napue v. Illinois*, 360 U.S. 264 (1959).

Fifth Amended Petition for Writ of Habeas Corpus, p. 38, lines 5-7.  Claim 4 includes several distinct subclaims, each based upon different factual assertions regarding the alleged misconduct of the prosecution.

In paragraphs 5.43 through 5.43.3 of Claim 4, Browning claims that the prosecution introduced misleading and inaccurate testimony, and failed to disclose material information, regarding bloody shoe prints at the scene of the murder.  Fifth Amended Petition for Writ of Habeas Corpus, pp. 39-40, ¶¶ 5.43-5.43.3.  Respondents argue that the *Napue* claim based on these allegations is unexhausted.  *See* Answer, p. 61.  However, Browning did raise both his *Brady* and *Napue* claims based on these allegations in the Nevada Supreme Court, and those claims are exhausted.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), p. 30; Appellant's Reply Brief, Respondents' Exhibit 251 (ECF No. 59-180 and 59-181), p. 8.

In paragraphs 5.44 through 5.44.2 of Claim 4, Browning claims that the prosecution introduced misleading and inaccurate testimony, and failed to disclose material information, regarding the description of the murderer received by Officer Branon when he arrived upon the scene.  Fifth Amended Petition for Writ of Habeas Corpus, pp. 41-42, ¶¶ 5.44-5.44.2.  Respondents argue that both the *Brady* and *Napue* claims based on these allegations are unexhausted.  *See* Answer, p. 61.  In his reply, though, Browning points out that, in his opening brief to the Nevada Supreme Court in his state-court habeas action, he did claim a *Brady* violation based on these allegations --albeit in a footnote in the section of the brief dealing with alleged ineffective assistance of counsel.  *See* Reply, pp. 20-81; *see also* Appellant's Reply Brief, Respondents' Exhibit 251 (ECF No. 59-180 and 59-181), p. 44 n.23.  Browning's *Brady* claim based on these allegations is,

therefore, exhausted.  Browning did not, however, argue to the Nevada Supreme Court that there was

a *Napue* violation based on these allegations; the fact that Browning used the words "prosecutorial

misconduct" in footnote 23 of the brief, to describe the prosecution's handling of the description of

the murder received by Branon, did not fairly present to the Nevada Supreme Corut a *Napue* claim

based on these allegations.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-

173, 59-174, 59-175); Appellant's Reply Brief, Respondents' Exhibit 251 (ECF No. 59-180 and 59-

181).  The *Napue* claim based on these allegations is unexhausted.

In paragraph 5.45 of Claim 4, Browning claims that the prosecution introduced misleading

and inaccurate testimony regarding a jacket found at the Wolfes' apartment.  Fifth Amended Petition

for Writ of Habeas Corpus, p. 42, ¶ 5.45.  Respondents argue that a *Brady* claim based on these

allegations would be unexhausted.  *See* Answer, pp. 61-62.  Browning replies that he does not intend

to raise a *Brady* claim with respect to these allegations.  Reply, p. 83 n.32.  The court, therefore,

construes paragraph 5.45 as asserting only a *Napue* claim, and determines that claim has been

exhausted in state court.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-

173, 59-174, 59-175), pp. 21-24.

In paragraphs 5.46 through 5.49 of Claim 4, Browning claims that the prosecution committed

*Brady* and *Napue* violations with regard to information concerning the credibility of Randall Wolfe.

Fifth Amended Petition for Writ of Habeas Corpus, pp. 42-46, ¶¶ 5.46-5.49.  Respondents do not

raise an exhaustion issue with respect to this *Brady* claim; and, indeed, the *Brady* claim regarding

Randall Wolfe's credibility is exhausted.  *See* Appellant's Opening Brief, Respondents' Exhibit 232

(ECF No. 59-173, 59-174, 59-175), pp. 24-29.  Respondents do argue that the *Napue* claim regarding

Randall Wolfe's credibility is unexhausted.  *See* Answer, p. 64.  Browning concedes that he did not

cite the *Napue* case itself in this context in his opening brief on the appeal in his state-court habeas

action, but he claims that he exhausted the claim by citing *Giglio v. United States*, 405 U.S. 150

(1972), and by a cryptic claim, in a footnote, of deception of the jury.  *See* Reply, p. 88.  The court

determines that the citation of *Giglio*, in the context of Browning's non-disclosure claim, and

footnote 16, in the brief to the Nevada Supreme Court, did not fairly present to the court a claim of a *Napue* violation with regard to the credibility of Randall Wolfe.  Browning also argues that this *Napue* claim was exhausted in a petition for extraordinary relief presented to the Nevada Supreme Court by Browning, acting *pro se*, in 2009.  *See* Respondents' Exhibit 394 (ECF Nos. 119-8, 119-9), pp. 52-54.  The court determines, however, that the assertion of this issue in Browning's petition for extraordinary relief, which was denied by the Nevada Supreme Court without any consideration of the merits of the petition, did not amount to exhaustion.  *See Castille v. Peoples*, 489 U.S. 346, 349-52 (1989)  (claim not exhausted if presented for first time in a procedural context in which its merits will not be considered absent extraordinary circumstances); *see also* Order Denying Petition, Respondents' Exhibit 396 (ECF No. 119-10) ("We have reviewed the documents submitted in this matter, and without deciding upon the merits of any claims, we decline to exercise original jurisdiction in this matter.").  The *Napue* claim, that the prosecution introduced misleading and inaccurate testimony regarding the credibility of Randall Wolfe, is unexhausted.

In paragraphs 5.50 through 5.51 of Claim 4, Browning claims, similarly, that the prosecution committed *Brady* and *Napue* violations with regard to information concerning the credibility of Vanessa Wolfe.  Fifth Amended Petition for Writ of Habeas Corpus, pp. 46-47, ¶¶ 5.50-5.51.  Respondents do not raise an exhaustion issue with respect to this *Brady* claim; indeed, the *Brady* claim regarding Vanessa Wolfe's credibility is exhausted.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), p. 29 n.17.  Respondents do argue that the *Napue* claim regarding Vanessa Wolfe's credibility is unexhausted.  *See* Answer, p. 65.  Here again, Browning concedes that he did not cite the *Napue* case itself in this context in his opening brief on the appeal in his state-court habeas action, but he claims that he exhausted the claim by citing *Giglio*.  *See* Reply, pp. 91-92.  The court determines that the citation of *Giglio*, in the context of Browning's non-disclosure claim, did not fairly present to the court a claim of a *Napue* violation with regard to the credibility of Vanessa Wolfe.  Browning also argues that this *Napue* claim was exhausted by means of the petition for extraordinary relief he presented to the Nevada Supreme

1    Court, *pro se*, in 2009.  *See* Respondents' Exhibit 394 (ECF Nos. 119-8, 119-9), pp. 52-54.  The

2    court determines, however, that the assertion of this issue in Browning's petition for extraordinary

3    relief, which was denied by the Nevada Supreme Court without any consideration of the merits of

4    the petition, did not amount to exhaustion.  *See Castille*, 489 U.S. at 349-52 (claim not exhausted if

5    presented for first time in a procedural context in which its merits will not be considered absent

6    extraordinary circumstances); *see also* Order Denying Petition, Respondents' Exhibit 396 (ECF No.

7    119-10) ("We have reviewed the documents submitted in this matter, and without deciding upon the

8    merits of any claims, we decline to exercise original jurisdiction in this matter.").  The *Napue* claim,

9    that the prosecution introduced misleading and inaccurate testimony regarding the credibility of

10   Vanessa Wolfe, is unexhausted.

11          In paragraphs 5.52 through 5.55 of Claim 4, Browning claims that the prosecution committed

12   *Brady* and *Napue* violations with regard to information concerning Josy Elsen's identification of

13   Browning at trial.  Fifth Amended Petition for Writ of Habeas Corpus, pp. 47-50, ¶¶ 5.52-5.55.

14   Respondents argue that both the *Brady* and *Napue* claims asserted in this part of Claim 4 are

15   unexhausted.  *See* Answer, pp. 65-66.  The court agrees.  Browning claims that he asserted this

16   *Brady* claim in his petition in the state district court (Reply, p. 93, lines 1-9), but he does not point to

17   -- and this court has not found -- any assertion of this *Brady* claim in the briefs he submitted to the

18   Nevada Supreme Court.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-

19   173, 59-174, 59-175); Appellant's Reply Brief, Respondents' Exhibit 251 (ECF No. 59-180 and 59-

20   181).  With respect to this *Napue* claim, Browning did assert, before the Nevada Supreme Court,

21   claims of prosecutorial misconduct related to Josy Elsen's identification of Browning (*see*

22   Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), pp. 30-

23   33), but nowhere made the sort of *Napue* claim that he makes in paragraph 5.55 of Claim 4.  Here

24   again, Browning argues that this claim was exhausted by means of the petition for extraordinary

25   relief he presented to the Nevada Supreme Court, *pro se*, in 2009.  *See* Respondents' Exhibit 394

26   (ECF Nos. 119-8, 119-9).  The court determines, however, that the assertion of this issue in

17

1   Browning's petition for extraordinary relief, which was denied by the Nevada Supreme Court

2   without any consideration of the merits of the petition, did not amount to exhaustion.  *See Castille*,

3   489 U.S. at 349-52 (claim not exhausted if presented for first time in a procedural context in which

4   its merits will not be considered absent extraordinary circumstances); *see also* Order Denying

5   Petition, Respondents' Exhibit 396 (ECF No. 119-10) ("We have reviewed the documents submitted

6   in this matter, and without deciding upon the merits of any claims, we decline to exercise original

7   jurisdiction in this matter.").   The court finds that both the *Brady* and *Napue* claims, regarding Josy

8   Elsen's identification of Browning, in paragraphs 5.52 through 5.55 of Claim 4, are unexhausted.

9         In paragraph 5.56 of Claim 4, Browning claims that the prosecution committed *Brady* and

10  *Napue* violations with regard to Browning's alleged drug use.  Fifth Amended Petition for Writ of

11  Habeas Corpus, p. 50, ¶ 5.56.  Respondents' do not argue that these claims are unexhausted; rather,

12  respondents argue that they are procedurally defaulted.  Answer, pp. 66-67.  The court determines

13  that the *Brady* and *Napue* claims in paragraph 5.56 of Claim 4 are exhausted.  *See* Appellant's

14  Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), pp. 35-38.

15        In paragraphs 5.57-5.57.1 of Claim 4, Browning claims that the prosecution committed a

16  *Brady* violation by not disclosing a sketch of the Wolfes' apartment.  Fifth Amended Petition for

17  Writ of Habeas Corpus, p. 51, ¶¶ 5.57-5.57.1.  There does not appear to be a *Napue* claim asserted in

18  paragraphs 5.57 through 5.57.1.  Respondents argue that this *Brady* claim is unexhausted.  *See*

19  Answer, p. 67.  Browning does not point to any assertion of this claim before the Nevada Supreme

20  Court.  *See* Reply, p. 96.  Indeed, it appears that this claim was not presented to the Nevada Supreme

21  Court.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-

22  175); Appellant's Reply Brief, Respondents' Exhibit 251 (ECF No. 59-180 and 59-181).   This

23  *Brady* claim, regarding the sketch of the Wolfes' apartment, is unexhausted.

24        Claim 5

25        In Claim 5, Browning claims that the prosecutor "committed numerous acts of misconduct

26  when he denigrated the presumption of innocence and reasonable doubt; shifted the burden of proof

18

to the defense; intentionally sought to inflame the jury with prejudicial characterizations of the crime scene and personal attacks on Mr. Browning; told the jury it was their 'duty' to convict Mr. Browning; and argued improper victim impact evidence." Fifth Amended Petition for Writ of Habeas Corpus, p. 52, lines 4-12.  In paragraphs 5.59 through 5.65 of Claim 5, Browning alleges seven distinct factual bases for this claim.  *Id.*, pp. 52-56, ¶¶5.59-5.65.

In paragraph 5.59 of Claim 5, Browning claims that the prosecutor, in his closing argument, committed misconduct by disparaging the presumption of innocence.  *Id.*, p. 52, ¶5.59.  Browning asserted this claim before the Nevada Supreme Court on his direct appeal.  *See* Appellant's Opening Brief, Respondents' Exhibit 84 (ECF No. 59-59), p. 20.  Browning also raised this issue before the Nevada Supreme Court on the appeal in his state-court habeas action.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), pp. 14, 34-35.  The claim in paragraph 5.59 is exhausted.

In paragraph 5.60 of Claim 5, Browning claims that the prosecutor, in his rebuttal closing argument, minimized the importance of the reasonable doubt standard, by discussing it in the context of everyday decision making.  Fifth Amended Petition for Writ of Habeas Corpus, p. 53, ¶5.60.  In particular, Browning complains of the following argument made by the prosecutor:

> You can't think of a situation in your life that's had any even minor degree or complications which you have resolved all of the questions.  You just can't do it.  So, don't anticipate answering all the questions in this case as a prerequisite to coming back with a guilty verdict.  It has nothing to do whatsoever with reasonable doubt.

*Id.*  Browning did not make this claim on his direct appeal.  *See* Appellant's Opening Brief, Respondents' Exhibit 84 (ECF No. 59-59); Appellant's Supplemental Opening Brief, Respondents' Exhibit 87 (ECF No. 59-61); Appellant's Reply Brief, Respondents' Exhibit 90 (ECF No. 59-64).  Browning did make this claim, however, on the appeal in his state-court habeas action (albeit in the part of his brief dealing with alleged ineffective assistance of appellate counsel).  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), p. 62.  The claim made by Browning in paragraph 5.60 is exhausted.

1     In paragraph 5.61, Browning claims that the prosecutor committed misconduct in his closing

2 argument when he made arguments that included a references to the movie "Something Wicked This

3 Way Comes," and the "Friday the 13th" movies.  Fifth Amended Petition for Writ of Habeas Corpus,

4 pp. 53-54, ¶5.61.  In paragraph 5.61, Browning also complains that the prosecutor made assertions

5 that Browning "was a heroin addict who liked killing," and that he "shot the life of Hugo Elsen right

6 up his arm."  *Id.*  Browning made these arguments on his direct appeal.  *See* Appellant's Opening

7 Brief, Respondents' Exhibit 84 (ECF No. 59-59), pp. 18, 20-23; Appellant's Reply Brief,

8 Respondents' Exhibit 90 (ECF No. 59-64), pp. 7-8.  Browning also made these arguments on the

9 appeal in his state-court habeas action.  *See* Appellant's Opening Brief, Respondents' Exhibit 232

10 (ECF No. 59-173, 59-174, 59-175), pp. 14, 38, 56.  The claim of prosecutorial misconduct in

11 paragraph 5.61 is exhausted.

12     In paragraph 5.62, Browning claims that the prosecutor committed misconduct, in his closing

13 argument, by commenting on the absence of Marsha Gaylord as a witness.  Fifth Amended Petition

14 for Writ of Habeas Corpus, p. 54, ¶5.62.   Browning did not raise this issue on his direct appeal.

15 *See* Appellant's Opening Brief, Respondents' Exhibit 84 (ECF No. 59-59); Appellant's

16 Supplemental Opening Brief, Respondents' Exhibit 87 (ECF No. 59-61); Appellant's Reply Brief,

17 Respondents' Exhibit 90 (ECF No. 59-64).  Browning did, however, raise this issue on the appeal in

18 his state-court habeas action.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No.

19 59-173, 59-174, 59-175), pp. 15, 33-34; Appellant's Reply Brief, Respondents' Exhibit 251 (ECF

20 No. 59-180 and 59-181), p. 4.  The claim made by Browning in paragraph 5.62 is exhausted.

21     In paragraph 5.63, Browning claims that the prosecutor committed misconduct by

22 introducing to the jury a photograph of Browning taken in the course of a prior arrest, and making

23 arguments regarding the photograph that indicated to the jury that Browning had engaged in prior

24 criminal activity.  Fifth Amended Petition for Writ of Habeas Corpus, pp. 54-55, ¶5.63.  Browning

25 did not raise this issue on his direct appeal.  *See* Appellant's Opening Brief, Respondents' Exhibit 84

26 (ECF No. 59-59); Appellant's Supplemental Opening Brief, Respondents' Exhibit 87 (ECF No. 59-

1   61); Appellant's Reply Brief, Respondents' Exhibit 90 (ECF No. 59-64).  Browning did, however,

2   raise this issue on the appeal in his state-court habeas action.  *See* Appellant's Opening Brief,

3   Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), p. 37.  The claim made by Browning

4   in paragraph 5.63 is exhausted.

5        In paragraph 5.64, Browning claims that the prosecutor committed misconduct by requesting

6   the jury to put themselves in the place of the victim, and by suggesting to the jury that it was their

7   job, or duty, to convict Browning.  Fifth Amended Petition for Writ of Habeas Corpus, p. 55, ¶5.64.

8   The first part of this claim – that the prosecutor committed misconduct by requesting the jury to put

9   themselves in the place of the victim – was raised by Browning on his direct appeal.  *See* Appellant's

10  Opening Brief, Respondents' Exhibit 84 (ECF No. 59-59), p. 22.  On the appeal in his state-court

11  habeas action, Browning raised, before the Nevada Supreme Court, the other part of this claim -- the

12  argument that the prosecutor improperly suggested to the jury that it was their job, or duty, to convict

13  Browning.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-

14  175), pp. 34-35.  The claims in paragraph 5.64 are exhausted.

15       In paragraph 5.65, Browning claims that the prosecutor committed misconduct by arguing to

16  the jury that Marsha Gaylord was a prostitute, and by arguing that Browning's motivation to rob the

17  jewelry store was to obtain money to bail Gaylord out of jail so she could resume making money for

18  them by prostituting herself.  Fifth Amended Petition for Writ of Habeas Corpus, pp. 55-56, ¶5.65.

19  On his direct appeal, Browning raised a similar claim – focusing on alleged attempts by the

20  prosecutor to characterize Gaylord as a prostitute while questioning witnesses, instead of focusing on

21  improper argument, as he does now.  *See* Appellant's Opening Brief, Respondents' Exhibit 84 (ECF

22  No. 59-59), p. 19.  Browning also raised this issue on the appeal in his state-court habeas action.  *See*

23  Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), pp. 35-38.

24  The claim made by Browning in paragraph 5.65 is exhausted.

25

26

Claim 6

In Claim 6, Browning claims that he was denied effective assistance of counsel at trial in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  *See* Fifth Amended Petition for Writ of Habeas Corpus, pp. 57-73.  Claim 6 includes several distinct subclaims, each based upon different factual assertions regarding the alleged shortcomings of counsel's representation of Browning at trial.

In paragraphs 5.68 through 5.68.2 of Claim 6, Browning claims that his counsel was ineffective for failing to object, make a motion, or request a curative instruction, when the prosecutor made certain statements in closing argument allegedly disparaging the presumption of innocence. *See* Fifth Amended Petition for Writ of Habeas Corpus, pp. 57-58, ¶¶5.68-5.68.2.  Browning made this claim on the appeal in his state habeas action.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), p. 55.  This claim is exhausted.

In  paragraphs 5.69 through 5.69.2, Browning claims that his counsel was ineffective for failing to object, or request a curative instruction, when the judge provided the jury a jury instruction (Jury Instruction No. 22) regarding the presumption of innocence and reasonable doubt.  *See* Fifth Amended Petition for Writ of Habeas Corpus, pp. 59-60, ¶¶5.69-5.69.2.  Browning made this claim on the appeal in his state habeas action.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), p. 55.  This claim is exhausted.

In  paragraphs 5.70 through 5.70.2, Browning claims that his counsel was ineffective for failing to object to the prosecutor's statements regarding Browning's alleged heroin use.  *See* Fifth Amended Petition for Writ of Habeas Corpus, pp. 60-61, ¶¶5.70-5.70.2.  Browning made this claim on the appeal in his state habeas action.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), p. 56.  This claim is exhausted.

In  paragraph 5.71, Browning claims that his counsel was ineffective for failing to object when the prosecutor argued to the jury that the blood on a jacket alleged to belong to Browning was the victim's blood, and further argued that singular fact was sufficient proof of guilt.  *See* Fifth

1    Amended Petition for Writ of Habeas Corpus, pp. 61-62, ¶5.71.  Respondents argue that this claim is

2    unexhausted.  *See* Answer, pp. 71-72.  However, the court finds that Browning did raise this claim

3    before the Nevada Supreme Court on his appeal in his state habeas action.  *See* Appellant's Opening

4    Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), p. 23 n. 11.  This claim is

5    exhausted.

6           In paragraphs 5.72 through 5.72.3, Browning claims that his counsel was ineffective with

7    respect to the absence of Marsha Gaylord as a witness at trial.  *See* Fifth Amended Petition for Writ

8    of Habeas Corpus, pp. 62-63, ¶¶5.720-5.72.3.  Respondents construe this as a claim that counsel was

9    ineffective for failing to secure Gaylord's attendance at trial.  *See* Answer, pp. 72-73.  In his reply,

10   however, Browning construes the claim in paragraphs 5.72 through 5.72.3 as a claim that counsel

11   was ineffective for failing "to object or request a curative instruction when the prosecution shifted

12   the burden to the defense to explain why they didn't call a relevant and exculpatory witness."  Reply,

13   p. 118, lines 17-22.  The court accepts Browning's characterization of this claim, and, as such, finds

14   it to have been exhausted by Browning on the appeal in his state-court habeas action.  *See*

15   Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), p. 56.

16          In  paragraphs 5.73 through 5.73.7, Browning claims that his counsel was ineffective for

17   failing to attempt to exclude the testimony of Josy Elsen identifying Browning as the murderer of her

18   husband.  *See* Fifth Amended Petition for Writ of Habeas Corpus, pp. 63-65, ¶¶5.73-5.73.7.

19   Browning made this claim on the appeal in his state habeas action.  *See* Appellant's Opening Brief,

20   Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), pp. 50-53.  This claim is exhausted.

21          In  paragraph 5.74, Browning claims that his counsel was ineffective for failing to use

22   available exculpatory evidence to properly move to exclude Debra Coe's identification outside the

23   presence of the jury.  *See* Fifth Amended Petition for Writ of Habeas Corpus, pp. 65-66, ¶5.74.

24   Browning made this claim on the appeal in his state habeas action.  *See* Appellant's Reply Brief,

25   Respondents' Exhibit 251 (ECF No. 59-180 and 59-181), pp. 10-11.  This claim is exhausted.

26

1    In  paragraph 5.75, Browning claims that his counsel was ineffective for not properly using a

2  prior out of court statement to impeach the testimony of Debra Coe.  *See* Fifth Amended Petition for

3  Writ of Habeas Corpus, pp. 66-67, ¶5.75.  Respondents argue that this claim is unexhausted.

4  Answer, p. 74.  However, before the Nevada Supreme Court, Browning did claim that his counsel

5  was ineffective for failing to properly cross-examine and impeach Debra Coe.  *See* Appellant's

6  Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), pp. 48-49.  The claim

7  made in paragraph 5.75 is exhausted.

8    In  paragraphs 5.76 through 5.76.6, Browning claims further that his counsel was ineffective

9  with respect to his cross-examination of Debra Coe.  *See* Fifth Amended Petition for Writ of Habeas

10  Corpus, pp. 67-69, ¶¶5.76-5.76.6.  Again, before the Nevada Supreme Court, Browning did claim

11  that his counsel was ineffective for failing to properly cross-examine and impeach Debra Coe.  *See*

12  Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), pp. 48-49.

13  The claim made in paragraphs 5.76 through 5.76.6 is exhausted.

14    In  paragraphs 5.77 through 5.77.3, Browning claims that his counsel was ineffective for

15  failing to object to the admission into evidence of a photograph depicting Browning wearing a tan

16  jacket.  *See* Fifth Amended Petition for Writ of Habeas Corpus, pp. 69-70, ¶¶5.77-5.77.3.

17  Respondents argue that this claim is not exhausted.  *See* Answer, pp. 74-75.  However, the court

18  finds that, on his appeal in his state-court habeas action, Browning did raise a claim sufficiently

19  similar to this one, such that the claim in paragraphs 5.77 through 5.77.3 is exhausted.  *See*

20  Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175),

21  pp. 49-50.

22    In  paragraph 5.78, Browning claims that his counsel was ineffective for failing to request a

23  jury instruction, regarding the testimony of Randall and Vanessa Wolfe, cautioning the jury about the

24  credibility of informers and drug addicts as witnesses.  *See* Fifth Amended Petition for Writ of

25  Habeas Corpus, pp. 70-71, ¶5.78.  Respondents argue that this claim is unexhausted, pointing out

26  that Browning raised the claim in his habeas petition in the state district court, but appears to have

abandoned the claim on appeal.  *See* Answer, pp. 75-76.  Browning responds, in his reply, asserting

that he raised the claim at page 67 of his opening brief before the Nevada Supreme Court.  *See*

Reply, p. 136.  However, the claim that Browning refers to, on page 67 of his opening brief before

the Nevada Supreme Court, was a claim that *appellate* counsel was ineffective in that *appellate*

counsel "should have raised the issue that the trial court should have given the jury an addict-

informer instruction."  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173,

59-174, 59-175), p. 67, lines 2-3.  This claim by Browning in the state supreme court did not exhaust

his claim here, in paragraph 5.78 of his fifth amended habeas petition, that *trial* counsel was

ineffective for not requesting an addict-informer instruction.  The claim in paragraph 5.78 is

unexhausted.

In paragraph 5.79, Browning claims, further, that his counsel was ineffective for failing to

object to the admission into evidence of an "out-dated" photograph of Browning and the

prosecution's use of the photograph to argue that Browning had engaged in prior criminal activity.

*See* Fifth Amended Petition for Writ of Habeas Corpus, p. 71, ¶5.79.  Browning raised this claim on

the appeal in his state-court habeas action.  *See* Appellant's Opening Brief, Respondents' Exhibit

232 (ECF No. 59-173, 59-174, 59-175), pp. 49-50.  The claim in paragraph 5.79 is exhausted.

In paragraph 5.80, Browning claims that his counsel was ineffective for failing to object to

the prosecutor's statement to the jury that it was their duty to put themselves in the shoes of the

victim and convict Browning, and in failing to request a curative instruction in response to that

argument.  *See* Fifth Amended Petition for Writ of Habeas Corpus, p. 71, ¶5.80.  Respondents argue

that this claim is unexhausted.  *See* Answer, pp. 76-77.  Browning did make the claim before the

Nevada Supreme Court that his counsel "failed to object to Seaton's statement to the jury that it was

their 'duty' to find the defendant guilty."  *See* Appellant's Opening Brief, Respondents' Exhibit 232

(ECF No. 59-173, 59-174, 59-175), p. 55, lines 3-4.  That claim is exhausted.  However, it appears

that Browning did not argue to the Nevada Supreme Court that his counsel was ineffective for failing

to object, or request a curative instruction, with respect to the prosecutor's argument that the jurors

should put themselves in the shoes of the victim.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175); Appellant's Reply Brief, Respondents' Exhibit 251 (ECF No. 59-180 and 59-181).  The latter claim – Browning's claim in paragraph 5.80 that his counsel was ineffective for failing to object, or request a curative instruction, with respect to the prosecutor's argument that the jurors should put themselves in the shoes of the victim – is unexhausted.

In paragraph 5.81, Browning claims that his counsel was ineffective for failing to object to the admission into evidence of a photograph of the victim, Hugo Elsen, with a child sitting on his lap, and for failing to object and request a curative instruction with regard to the prosecutor's argument based on that photograph.  *See* Fifth Amended Petition for Writ of Habeas Corpus, p. 72, ¶5.81.  Browning raised this claim on the appeal in his state-court habeas action.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), p. 56.  The claim in paragraph 5.81 is exhausted.

In  paragraph 5.82, Browning claims that his counsel was ineffective for failing to object to a comment made by the trial judge regarding the knife that was allegedly used to kill Hugo Elsen, and for failing to request a curative instruction regarding that comment.  *See* Fifth Amended Petition for Writ of Habeas Corpus, p. 72, ¶5.82.  Respondents argue that this claim is unexhausted.  *See* Answer, pp. 77-78.  The court agrees.  Browning did not make this claim before the Nevada Supreme Court.  *See* Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175); Appellant's Reply Brief, Respondents' Exhibit 251 (ECF No. 59-180 and 59-181). The claim in paragraph 5.82 is unexhausted.

In  paragraph 5.83, Browning claims that his counsel was ineffective for failing to object to arguments made by the prosecutor, in which the prosecutor asserted that Marsha Gaylord was a prostitute.  *See* Fifth Amended Petition for Writ of Habeas Corpus, p. 73, ¶5.83.  Browning raised this claim on the appeal in his state-court habeas action.  *See* Appellant's Opening Brief,

1   Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), p. 56.  The claim in paragraph 5.83 is

2   exhausted.

3        In  paragraph 5.84, Browning claims that his counsel was ineffective for failing to object to

4   allegedly misleading statements by the prosecutor about a Casio watch.  *See* Fifth Amended Petition

5   for Writ of Habeas Corpus, p. 73, ¶5.84.  Respondents argue that this claim is unexhausted.  *See*

6   Answer, p. 78.  Browning responds, in his reply, asserting that he raised the claim at page 63 of his

7   opening brief before the Nevada Supreme Court.  *See* Reply, p. 145.  However, the claim that

8   Browning refers to, on page 63 of his opening brief before the Nevada Supreme Court, was a claim

9   that *appellate* counsel was ineffective for not raising the issue of the allegedly improper admission

10   into evidence of a thumbprint found on the Casio watch.  *See* Appellant's Opening Brief,

11   Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175), pp. 63-64.  This claim by Browning in

12   the state supreme court did not exhaust his claim here, in paragraph 5.84 of his fifth amended habeas

13   petition, that *trial* counsel was ineffective for failing to object to allegedly misleading statements by

14   the prosecutor about the watch.  The claim in paragraph 5.84 is unexhausted.

15       <u>Claim 7</u>

16        In Claim 7 of his fifth amended habeas petition, Browning claims that Josy Elsen's in-court

17   identification of him as her husband's murderer was unconstitutionally unreliable.  *See* Fifth

18   Amended Petition for Writ of Habeas Corpus, p. 74; *see also id*. at 74-82.  Browning asserted a

19   similar claim on his direct appeal.  *See* Appellant's Opening Brief, Respondents' Exhibit 84 (ECF

20   No. 59-59), pp. 28, 30-31; Appellant's Supplemental Opening Brief, Respondents' Exhibit 87 (ECF

21   No. 59-61), pp. 15-18; Appellant's Reply Brief, Respondents' Exhibit 90 (ECF No. 59-64), pp. 11-

22   13.  Also, on the appeal in his state-court habeas action, in his reply brief before the Nevada Supreme

23   Court, Browning claimed to have raised a similar claim (although the assertion of such a claim,

24   independent of his claims of ineffective assistance of counsel and prosecutorial misconduct, was not

25   apparent in the opening brief, or elsewhere in the reply brief).  *See* Appellant's Reply Brief,

26   Respondents' Exhibit 251 (ECF No. 59-180 and 59-181), p. 12 ("This [Nevada Supreme] Court [on

1   the direct appeal] did not address the issues presented here: whether counsel was ineffective because

2   of his failure to move for suppression of the identification and whether admission of the

3   identification violated the federal constitutional right of due process.").  Claim 7 is exhausted.

4        Claim 8

5        In Claim 8 of his fifth amended habeas petition, Browning claims that his "constitutional

6   right to due process was violated by the giving of an instruction on premeditation and deliberation

7   that effectively removed an essential element and the requirement that all elements be proven and

8   found beyond a reasonable doubt."  Fifth Amended Petition for Writ of Habeas Corpus, p. 83; *see*

9   *also id*. at 83-87.  Respondents argue that this claim is unexhausted.  *See* Answer, pp. 80-81.  The

10  court agrees, and finds this claim unexhausted, as it was raised neither on Browning's direct appeal

11  nor on the appeal in his state-court habeas action.  *See* Appellant's Opening Brief, Respondents'

12  Exhibit 84 (ECF No. 59-59); Appellant's Supplemental Opening Brief, Respondents' Exhibit 87

13  (ECF No. 59-61); Appellant's Reply Brief, Respondents' Exhibit 90 (ECF No. 59-64); Appellant's

14  Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175); Appellant's Reply

15  Brief, Respondents' Exhibit 251 (ECF No. 59-180 and 59-181).

16       Browning argues, in his reply, that "[t]he issue regarding the adequacy of the premeditation

17  instruction was raised in the opening brief to the Nevada Supreme Court [on the appeal in the state-

18  court habeas action] as part of the appellate ineffectiveness claims."  *See* Reply, p. 157.  However,

19  Browning's assertion of a claim of ineffective assistance of counsel related to this claim did not

20  exhaust this claim.  *See Kelly v. Small*, 315 F.3d 1063, 1068 n.2 (9th Cir. 2003) (although petitioner

21  exhausted a claim of ineffective assistance based on counsel's failure to object to alleged

22  prosecutorial misconduct, petitioner had not exhausted a related ineffective assistance claim

23  premised on counsel's failure to file a motion to recuse the prosecutor based on that same

24  misconduct); *see also Rose v. Palmateer*, 395 F.3d 1108, 1111-12 (9th Cir. 2005) ("Here, although

25  Rose's Fifth Amendment claim is related to his claim of ineffective assistance, he did not fairly

26  present the Fifth Amendment claim to the state courts when he merely discussed it as one of several

issues which were handled ineffectively by his trial and appellate counsel. While admittedly related, they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts.").

Browning also argues in his reply that he raised this claim in his 2009 *pro se* petition to the Nevada Supreme Court for extraordinary relief. *See* Respondents' Exhibit 394 (ECF Nos. 119-8, 119-9). However, the assertion of this issue in Browning's petition for extraordinary relief, which was denied by the Nevada Supreme Court without any consideration of the merits of the petition, did not amount to exhaustion. *See Castille v. Peoples*, 489 U.S. 346, 349-52 (1989) (claim not exhausted if presented for first time in a procedural context in which its merits will not be considered absent extraordinary circumstances); *see also* Order Denying Petition, Respondents' Exhibit 396 (ECF No. 119-10) ("We have reviewed the documents submitted in this matter, and without deciding upon the merits of any claims, we decline to exercise original jurisdiction in this matter.").

Claim 8 is unexhausted.

Claim 9

In Claim 9 of his fifth amended habeas petition, Browning claims that his "due process guarantee was violated when the court gave an instruction that inadequately defined reasonable doubt and permitted the jury to convict Mr. Browning based on a lesser quantum of evidence [than] is constitutionally required." Fifth Amended Petition for Writ of Habeas Corpus, p. 88; *see also id*. at 88-90. Respondents argue that this claim is unexhausted. *See* Answer, pp. 81-82. The court agrees, and finds this claim unexhausted, as it was raised neither on Browning's direct appeal nor on the appeal in his state-court habeas action. *See* Appellant's Opening Brief, Respondents' Exhibit 84 (ECF No. 59-59); Appellant's Supplemental Opening Brief, Respondents' Exhibit 87 (ECF No. 59-61); Appellant's Reply Brief, Respondents' Exhibit 90 (ECF No. 59-64); Appellant's Opening Brief, Respondents' Exhibit 232 (ECF No. 59-173, 59-174, 59-175); Appellant's Reply Brief, Respondents' Exhibit 251 (ECF No. 59-180 and 59-181).

Browning argues, in his reply, that this claim is exhausted, citing a portion of his opening

brief on the appeal in his state-court habeas action dealing with a related claim of ineffective

assistance of counsel.  *See* Reply, pp. 164-65, citing Appellant's Opening Brief, Respondents'

Exhibit 232 (ECF No. 59-173, 59-174, 59-175), p. 55.  However, here again, Browning's assertion

of a claim of ineffective assistance of counsel related to this claim did not exhaust this claim.

*See Kelly*, 315 F.3d at 1068 n.2; *see also Rose*, 395 F.3d at 1111-12.

   Claim 9 is unexhausted.

   <u>Claim 10</u>

   In Claim 10 of his fifth amended habeas petition, Browning claims that his constitutional

rights were violated, at his resentencing, because "the prosecution, with the blessing of Judge

Pavlikowski, knowingly introduced concededly false evidence to the second penalty jury, and the

trial court prohibited the defense from challenging these falsehoods in any way."  Fifth Amended

Petition for Writ of Habeas Corpus, p. 91; *see also id*. at 91-103.  Specifically, Browning claims that,

at the resentencing, the prosecution offered, and the court admitted, false evidence regarding the

bloody footprints at the scene of the murder (*id*. at ¶¶5.112-5.113.2), the tan jacket (*id*. at ¶5.114),

Randall Wolfe (*id*. at ¶¶5.115-5.117), Vanessa Wolfe (*id*. at ¶¶5.118-5.119), Josy Elsen's

identification of Browning (*id*. at ¶¶5.120-5.121), Hugo Elsen's dying declaration (*id*. at ¶¶5.122-

5.123), Browning's fingerprints on a piece of glass found at the scene of the murder (*id*. at ¶5.124),

and the Casio watch found at the Wolfes' apartment (*id*. at ¶¶5.125-5.126).  Respondents do not

challenge Claim 10 on exhaustion grounds.  *See* Answer, pp. 82-87.  Indeed, the record reflects that

Browning presented this claim to the Nevada Supreme Court on the appeal from the resentencing.

*See* Appellant's Opening Brief, Respondents' Exhibit 378 (ECF No. 119-1), pp. 14-40.  Claim 10 is

exhausted.

   <u>Claim 11</u>

   Finally, Claim 11 of Browning's fifth amended habeas petition is a cumulative error claim.

*See* Fifth Amended Petition for Writ of Habeas Corpus, pp. 104-05.  In Claim 11, Browning claims:

> The cumulative effect of the errors demonstrated in this petition deprived Mr.
> Browning of fundamentally fair proceedings and resulted in a constitutionally

1  unreliable guilt determination.  Whether or not any individual error requires the
2  vacation of his conviction, the totality of these errors and omissions resulted in
   substantial prejudice to Mr. Browning.

3  *Id*. at 104.  Respondents do not appear to challenge Claim 11 on exhaustion grounds.  *See* Answer,

4  pp. 87-89.  As Claim 11 is a cumulative error claim, and because there are many claims in the fifth

5  amended petition that are exhausted, Claim 11 is exhausted,.

6  <u>Browning's Election</u>

7  As is discussed above, the court finds the following of Browning's claims, in his fifth

8  amended habeas petition, to be unexhausted in state court:

9  -  the claim that his counsel was ineffective for failing to conduct sufficient
   investigation of the knife (subclaim in Claim 1 at ¶¶ 5.12 through 5.12.4);

10
11  -  the claim that his counsel was ineffective for failing to do investigation to
   discover "that the police examined Mr. Browning's shoes and his body for
12  cuts, scrapes or any other injuries that might be consistent with the broken
   glass and/or blood; and nothing was found," for failing to do investigation to
   discover "that the Las Vegas Police Department specifically requested the
13  Las Vegas Crime Lab to test Mr. Browning's clothes, with no results tying Mr.
   Browning to the crime scene," and for failing to do investigation to discover
14  that witnesses -- other than Debra Coe -- did not observe blood on Browning
   and did not observe him carrying anything in his hands, such as jewelry or the
15  three foot-long jewelry trays (subclaim in Claim 1 at ¶¶ 5.14 through 5.14.5);

16  -  the claim that his counsel was ineffective for failing to locate and interview
   Mike Hines regarding the sale of the stolen jewelry (subclaim in Claim 1 at ¶¶
17  5.16 through 5.16.4);

18  -  the claim that his counsel was ineffective for failing to conduct a pretrial
   interview of Kathy Adkins, an identification specialist with the
19  Las Vegas Metropolitan Police Department, and a witness for the prosecution
   at Browning's trial, and for failing to conduct pretrial investigation to discover
20  the existence of a sketch of the Wolfes' motel room showing the location of
   each item recovered there (subclaim in Claim 1 at ¶¶ 5.17 through 5.17.3);

21
   -  the *Napue* claim, that the prosecution introduced misleading and inaccurate
22  testimony regarding the description of the murderer received by Officer
   Branon when he arrived upon the scene (subclaim in Claim 4 at
23  ¶¶ 5.44-5.44.2);

24  -  the *Napue* claim, that the prosecution introduced misleading and inaccurate
   testimony regarding the credibility of Randall Wolfe (subclaim in Claim 4 at
25  ¶¶ 5.46-5.49);
   -  the *Napue* claim, that the prosecution introduced misleading and inaccurate
26  testimony regarding the credibility of Vanessa Wolfe (subclaim in Claim 4 at
   ¶¶ 5.50-5.51);

-    the *Brady* and *Napue* claims, regarding Josy Elsen's identification of Browning (subclaim in Claim 4 at ¶¶5.52-5.55);

-    the *Brady* claim, that the prosecution did not disclose a sketch of the Wolfes' apartment (subclaim in Claim 4 at ¶¶ 5.57-5.57.1);

-    the claim that counsel was ineffective for failing to request a jury instruction, regarding the testimony of Randall and Vanessa Wolfe, cautioning the jury about the credibility of informers and drug addicts as witnesses (subclaim in Claim 6 at ¶5.78);

-    the claim that counsel was ineffective for failing to object, or request a curative instruction, with respect to the prosecutor's argument that the jurors should put themselves in the shoes of the victim (subclaim in Claim 6 at ¶5.80);

-    the claim that counsel was ineffective for failing to object to a comment made by the trial judge regarding the knife that was allegedly used to kill Hugo Elsen, and for failing to request a curative instruction regarding that comment (subclaim in Claim 6 at ¶5.82);

-    the claim that counsel was ineffective for failing to object to allegedly misleading statements by the prosecutor about a Casio watch (subclaim in Claim 6 at ¶5.84);

-    the claim that his constitutional right to due process was violated by the giving of an instruction on premeditation and deliberation that effectively removed an essential element and the requirement that all elements be proven and found beyond a reasonable doubt (Claim 8, ¶¶5.98-5.102.2);

-    the claim that his due process guarantee was violated when the court gave an instruction that inadequately defined reasonable doubt and permitted the jury to convict Mr. Browning based on a lesser quantum of evidence than is constitutionally required (Claim 9, ¶¶5.103-5.105)

With respect to these unexhausted claims, the court will direct Browning to make an election. Browning must either file a notice of abandonment of the unexhausted claims, indicating that he elects to abandon the unexhausted claims and proceed with the litigation of his remaining exhausted claims, or, alternatively, file a motion for stay, requesting a stay of these proceedings to allow him to return to state court to exhaust the unexhausted claims.  If Browning elects to file a motion for stay, he must make a showing that a stay is warranted, as prescribed in the Supreme Court case of *Rhines v. Weber*, 544 U.S. 269 (2005).  If petitioner does not, within the time allowed, file a notice of abandonment of all his unexhausted claims, or a motion for a stay to allow exhaustion of his

32

1  unexhausted claims in state court, Browning's entire fifth amended habeas petition will be dismissed

2  pursuant to *Rose v. Lundy*, 455 U.S. 509 (1982).

3      **IT IS THEREFORE ORDERED** that petitioner's "Motion and Memorandum for Oral

4  Argument on Petitioner's Fifth Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. §

5  2254 by a Person in State Custody" (ECF No. 160) is **DENIED**.

6      **IT IS FURTHER ORDERED** that petitioner shall have until and including **May 17, 2013**,

7  to file a notice of abandonment of all his unexhausted claims, or a motion for a stay to allow

8  exhaustion of his unexhausted claims in state court, as described in more detail above.

9      **IT IS FURTHER ORDERED** that, if petitioner files a notice of abandonment of all his

10  unexhausted claims, the case will remain under submission to the court with respect to the merits of

11  petitioner's remaining exhausted claims.

12      **IT IS FURTHER ORDERED** that, if petitioner files a  motion for a stay to allow

13  exhaustion of his unexhausted claims in state court, respondents shall thereafter have 30 days to file

14  a response to that motion, and petitioner shall thereafter have 20 days to file a reply.

15      **IT IS FURTHER ORDERED** that, if petitioner does not, within the time allowed, file a

16  notice of abandonment of all his unexhausted claims, or a motion for a stay to allow exhaustion of

17  his unexhausted claims in state court, Browning's entire fifth amended habeas petition will be

18  dismissed pursuant to *Rose v. Lundy*, 455 U.S. 509 (1982).

19      Dated this 5th day of April, 2013.

20

21

22

23                            UNITED STATES DISTRICT JUDGE

24

25

26